Davis v. Green.

DAVIS, *Appellant*, v. GREEN *et al.*

1. **Sheriff's Sale** : PURCHASE PRICE : PRESUMPTION. In the absence of anything to the contrary it will be presumed that the purchaser at a sheriff's sale paid the purchase price the day of the execution of the sheriff's deed.

2. **Partition Sale** : PURCHASER : DEED : TRUST. The equity of a purchaser at a partition sale to call for and demand a deed becomes full and complete the instant the purchase money is fully paid, and thereupon the parties to the partition proceeding become seized of the legal title in trust for such purchaser and so remain until the execution of the sheriff's deed.

3. **Dower** : STATUTE. Under the statute a widow may be endowed of interests in lands whereof her husband, or any other person to his use, was seized of an estate of inheritance. (R. S. 1879, sec. 2186 ; R. S. 1889, sec. 4513.)

4. —— : JUDGMENT AGAINST HUSBAND. No judgment against the husband will prejudice the right and interest of the wife, without her assent as provided by statute. (R. S. 1879, sec. 2197; R. S. 1889, sec. 4525.) And this is true, whether she be regarded as endowable by reason of the equitable or legal seizin of the husband.

5. **Relation.** The doctrine of relation is a mere fiction of law which is never allowed to operate so as to cut out the intervening rights of strangers.

6. **Execution Sales** : INTEREST OF JUDGMENT DEBTOR. Execution sales of real estate ordinarily affect only such interest as the judgment debtor had therein at the date of the sale, and not such as he may acquire thereafter.

7. —— : TITLE OF PURCHASER. The title of the purchaser at execution sale to the interest bought does not ordinarily pass to and vest in him until the execution of the sheriff's deed therefor.

8. —— : HUSBAND'S INTEREST : DOWER. While a sheriff's deed under an execution against the husband will pass the latter's equity in lands as against himself, his heirs and assigns, yet it will not, under the statute nor under the doctrine of relation, prejudice the wife's right of dower.

9. —— : DOWER. The wife's dower right in the husband's legal seizin will not be prejudiced by an execution sale against the husband where the latter acquired such seizin after the sale.

10. **Dower**: EVIDENCE: DECLARATIONS OF HUSBAND AGAINST WIFE'S INTEREST. Admissions and declarations of the husband made after he had ceased to have any constructive possession or estate in law or equity in land, he never having had seizin in fact, are not admissible against the wife in an action by her to enforce her claim to dower in the land.

11. **Resulting Trust**: EVIDENCE OF PERSON SINCE DEAD. Testimony as to verbal admissions of persons since dead is to be received with great allowance, and whenever it is attempted to prove resulting trusts by virtue of such admissions, the testimony must be clear, strong and unequivocal and leave no room for doubt in the mind of the chancellor as to the existence of such a trust.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*W. W. Fry* for appellant.

(1) The right of the husband during coverture to make corporeal seizin is sufficient to entitle the widow to dower without actual seizure. It is of no effect whether Davis had actual seizin or not. *Gentry v. Woodson*, 10 Mo. 224; *Warren v. Williams*, 25 Mo. App. 22; R. S., secs. 2186, 2207. (2) Williams' answer in the Crump case and the testimony of the witness, Duncan, was hearsay and incompetent. Greenl. Ev., sec. 90. It was a declaration of a third party and not admissible for any purpose. Declarations touching the title to land are inadmissible to impair the title of others. *Hambright v. Brockman*, 59 Mo. 52; *Grady v. McCorkle*, 57 Mo. 172; *Williams v. Courtney*, 77 Mo. 587. Declarations of a party not in possession are valueless and inadmissible. *Gordon v. Ritenour*, 87 Mo. 59; *Weinrich v. Porter*, 47 Mo. 293; *Albert v. Besel*, 88 Mo. 154. After the husband has disposed of his title and is out of possession his declarations are those of a stranger. Greenl. Ev., sec. 109. (3) The widow is entitled to dower in the lands which her husband held under an inchoate title, although he may have conveyed

it prior to the confirmation. *Thomas v. Hesse*, 34 Mo.
13. If Davis did hold the land in trust for Williams,
Williams having failed to enforce the trust during the
life of Davis, the widow has dower in the whole of it.
*Thomas v. Hesse, supra; Duke v. Brandt*, 51 Mo. 221.
(4) The relation of trustee and *cestui que trust* to
create a resulting trust must result from the facts as
they exist at the time of the purchase, and cannot be
created by subsequent occurrences. *Kelly v. Johnson*,
28 Mo. 249; Perry on Trust, sec. 133. If Williams was
on the Davis notes for the deferred payments, payment
of the notes by Williams subsequent to the purchase
and the deed of Davis did not create a resulting
trust. (5) If Williams had a vendor's lien he did not
enforce it by sale, and it did not affect plaintiff's dower.
*Duke v. Brandt, supra; Thomas v. Hesse*, 34 Mo. 13.
(6) On defendant's theory of a resulting trust, plaintiff
has dower in half of the land. *Bowen v. McKean*, 82 Mo.
598; *Shaw v. Shaw*, 86 Mo. 598; *Kelly v. Johnson*, 28
Mo. 249. (7) Resulting trusts must not be declared
upon doubtful evidence or on a preponderance of evi-
dence. There should be no room for a reasonable doubt.
*Allen v. Logan*, 96 Mo. 601; *Adams v. Burns*, 96 Mo.
363; *Johnson v. Quarles*, 46 Mo. 424.

*Duncan & Jesse* for respondents.

Davis had not such seizin as would at common law
entitle his wife to dower. He had neither deed nor
possession during coverture. 1 Washburn Real Prop-
erty, 215; 1 Scrib. Dower, 249, *et seq.* The purchase
money was never paid by plaintiff's husband, and no
one was seized to his use, and he had no such seizin as
would entitle plaintiff to dower under section 2186.
*Worsham v. Callison*, 49 Mo. 207; *Duke v. Brandt*,
51 Mo. 223. The burden is on plaintiff to prove seizin,
and there was no evidence showing that plaintiff's
husband was seized prior to the date of the sale under
which Williams bought. *Gentry v. Woodson*, 10 Mo.

225. The sheriff's deed to Williams related back to . date of sale. *Shumate v. Reavis*, 49 Mo. 333. The transfer by sheriff's sale and deed of Davis' equitable interest to Williams defeated plaintiff's inchoate right of dower. *Worsham v. Callison*, 49 Mo. 207; *Duke v. Brandt*, 51 Mo. 223. The declarations of Davis that he only held the title in trust for Williams were admissible against plaintiff, who claimed through him. *Van Duyne v. Thayre*, 14 Wend. 233; *Johnson v. Quarrles*, 46 Mo. 423; *Ringo v. Richardson*, 53 Mo. 385. If Williams paid Davis part of the purchase price under the trust agreement between them, then Williams retained a lien on the land for the amount so paid, and plaintiff acquired no right to dower in the land, the purchase money not being paid. *Edmonston v. Phillips*, 73 Mo. 59; *Sweet v. Jeffries*, 48 Mo. 279; *Bennett v. Shipley*, 82 Mo. 453.

ROBERT DARWIN RAY, C. J.—The plaintiff, who is the widow of Silas W. Davis, deceased, brought this action in 1887 to have dower admeasured and set off to her in the lands described in the petition, being the northeast quarter of the southwest quarter of section 12, township 50, range 9, west. On April 26, 1860, Silas Davis, then being the husband of plaintiff, purchased the land in dispute with others, at a partition sale, in a suit, by the heirs of Wm. Sims entitled "Evans *et al. v.* Sims *et al.*," for the sum of $800, one-fifth cash, and balance in one and two years, with interest at ten per cent. from date of sale. The sheriff's report of sale showing collection of purchase money and interest was filed April 29, 1863, the sheriff's deed was executed and delivered to said Davis, May 2, 1863, and was put on record, May 19, 1863. Said Davis died in July, 1886, without ever being, at any time, in the actual possession of the land or any part thereof.

April 29, 1862, judgment was recovered in the circuit court of Audrain county against said Silas Davis

and C. C. Ricketts in favor of one Hubble, execution issued thereon in January, 1863, and levied on the land March 6, 1863, and at a sale of the land, had under said execution, May 1, 1863, Henry Williams became the purchaser and obtained a sheriff's deed therefor dated May 4, 1863. Williams took possession, date of possession not given, under his said purchase, and defendants claim under him, by a regular chain of title.

Mr. Duncan, attorney for defendants herein, was called as a witness for defendants and stated, that, as attorney for one Crump, he recovered a judgment against said Davis in 1867 and had the land sold under execution to Crump, and that afterwards, in 1868 or 1869, he instituted a suit in ejectment for said Crump against one Hutchens, who was at that time in possession of this land, and that said Henry Williams was, upon his own motion, made a party defendant in the Crump suit, and that in 1869 said defendants, Hutchens and Williams, filed their joint answer therein.

Here the witness was asked what, if any, conversation he had with S. W. Davis, about whose money paid for this land in dispute, in the purchase of the same, at the Sims partition sale in 1859. To this question, and the evidence called for, plaintiff objected, and to all evidence in regard to the Crump case, and to testimony of witnesses, as to any conversation with Davis in 1868, as called for, because plaintiff was not bound by any statement of Davis therein; that neither plaintiff, nor her husband, were parties to said suit, and plaintiff was not bound by said suit, or any statement of Davis in regard to it; that the oral testimony offered was not admissible against the record in the partition suit, and the sheriff's deed to Davis, especially after the lapse of nearly twenty years; that the evidence called for was hearsay, incompetent, irrelevant and immaterial. The court overruled plaintiff's objection and admitted the evidence, and plaintiff excepted.

The witness Duncan continuing said : "After the answer was filed, I called on S. W. Davis to know about it, as I expected to use him as a witness in the Crump case. This was in 1868. I read the answer to Davis and he said the facts recited in it were true." Witness was asked what, if anything, Davis said as to the purchase of the land at the partition sale, and for whose benefit the purchase was made, who paid the purchase money, and all Davis said. Plaintiff objected on the ground that the declaration and admission of the husband were not binding on her, and incompetent. The objections were overruled and plaintiff excepted.

Said witness then continued his testimony as follows : "Davis told me that when the lands were sold in April, 1860, in the partition suit he, Davis, and Henry Williams were, by agreement, to buy the lands jointly and that he attended the sale and bid in the land for $800, one-fifth cash and the remainder in one and two years. He and Williams each paid one-half of the cash payment and gave their joint notes for the deferred payments and the sheriff made him, Davis, a deed to the lands May 2, 1863. He was unable to meet his part of the deferred payments, and Williams paid off the notes in July, 1863."

On cross-examination witness said : "I am attorney for the defendants in this case. I cannot give the exact language used in the conversation between Davis and myself, it has been so long ago. In fact, I had forgotten all about it, until, as attorney for defendants, in investigating this case, I found the papers. I ran across this answer in the Crump case, and, after reading that, I recollected of having this conversation with Davis. I do not remember when that conversation was. Davis died in 1886."

Defendants then offered to read in evidence the answer of Williams in the Crump ejectment suit, to which the plaintiff objected on the ground that it was

irrelevant, incompetent and immaterial, and that neither Davis nor plaintiff were parties to this suit or bound by it. The objections were overruled and plaintiff excepted.

The answer read was filed July, 1868, entitled James Crump, plaintiff, v. Warner Hutchens and Henry Williams, defendants. The answer is first a general denial, then a specific answer to the effect that, in 1860, said land was to be sold in the partition case of Evans et al. v. Martin J. Adams et al.; that Henry Williams agreed with S. W. Davis that Davis should attend said sale to bid in the land offered for sale, "for the joint use and benefit of themselves and as joint owners;" that Davis attended said sale and purchased said lands for $800 for the use and benefit of said Williams and Davis; that the terms of said sale were one-fifth cash, which was paid at the time by Davis, the other half by Williams, and the balance to be paid in one and two years with interest; that Davis and Williams gave their joint notes for the deferred payments; that in July, 1863, Williams paid said deferred payments; that, in 1863, the sheriff under the partition sale executed and delivered a deed for said lands to Davis as the highest and best bidder, of which Crump had notice. There is evidence in the present case to show that the various grantees under Williams took possession, and that Williams and those holding under him, including defendants, have been in possession since.

This being the substance of the evidence, so far as material, the court refused the single instruction asked in plaintiff's behalf and which we deem it unnecessary to set out, as the one instruction given in the cause at the defendants' instance shows the theory upon which the court tried and determined the controversy.

The instruction so given, and under which the finding was had, is as follows: "If the court sitting as a jury believe from the evidence in the case, that, at the sale by the sheriff in partition, S. W. Davis bought the

land in controversy with other lands for himself and Henry Williams, and each paid one-half of the cash payment, namely, $80, and gave their joint notes for the balance of the purchase price, payable in one and two years thereafter, and that Williams paid said notes himself, and Davis paid no part thereof, then the deed from the sheriff to Williams, read in evidence, transferred to Williams all the right in equity Davis had in the land by virtue of his purchase from the sheriff, and if said Davis never afterwards refunded to Williams his part of the money so paid, and was not in possession of the lands at his death, the plaintiff's inchoate right of dower was defeated, and the finding must be for the defendant."

The foregoing instruction was given upon the theory that the admissions and declarations of Davis, in connection with the answer in the Crump suit as testified to by the witness, Duncan, were sufficient, competent and admissible in evidence. If, however, it should be held that they were not, the instruction would then be manifestly inapplicable to the case made by the remaining facts in evidence, and for that reason, if no other, erroneous, and needs no further notice at present.

The questions arising upon the facts of this record may, for convenience, be classified as follows:

*First.* Those arising upon the theory that the admissions and declarations of Davis, the husband, were incompetent, inadmissible and insufficient, as against his widow.

*Second.* The competency, sufficiency and admissibility of those admissions and declarations as well as said answer in the Crump case; and, if held incompetent, inadmissible and insufficient, no further inquiry need be made as to their possible effect.

The first classification involves a consideration of the operation and effect of various sections of the statute, hereinafter mentioned, as well as the proper

construction of the sheriff's deed in partition to Davis, with its recitals, in connection with the sheriff's report of the sale, and the collection of the purchase money and its recitals ; and, also, a like consideration and construction of the sheriff's deed to Williams, under execution, upon the Hubble judgment against said Davis and Ricketts, with its recitals, and the effect thereof.

It will be found, upon examination, that, during the progress of the several transactions involved herein, a number of conflicting liens and equities sprang up and fastened themselves upon the property in question that tends, somewhat, to complicate the matter, and render its proper solution seemingly difficult ; but upon a careful examination they will be found to disappear.

Section 2186, Revised Statutes, 1879, provides that : "Every widow shall be endowed of the third part of all the lands whereof her husband, or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law, to hold and enjoy during her natural life."

Section 2730, Revised Statutes, 1879, enacts that : "Judgments and decrees rendered by any court of record shall be a lien on the real estate of the person, against whom they are rendered, situate in the county for which the court is held."

Section 2731, Revised Statutes, 1879, declares that : "The lien of a judgment or decree shall extend, as well to the real estate acquired after the rendition thereof, as to that which was owned, when the judgment or decree was rendered."

Section 2197, Revised Statutes, 1879, provides that : "No act, deed or conveyance, executed or performed by the husband, without the assent of the wife, evidenced by her acknowledgment thereof, in the manner required by law to pass the estate of married women ; and no judgment or decree confessed by, or recovered

against, him, and no laches, default, covin or crime of the husband, shall prejudice the right and interest of the wife, provided in the foregoing sections of this chapter."

The sheriff's deed in partition to Davis bears date May 2, 1863, and recites the payment of the purchase money by Davis, but does not specify the date of the payment. In the absence of anything to the contrary, it will be presumed the payment was made the day the deed was executed. In this case, however, the record shows, by the sheriff's report of sales and collections of the purchase money filed April 29, 1863, that it was paid, at least, that early, if not before (four days before the date of sheriff's deed in partition to Davis, and two days before the date of the sheriff's *sale* to Williams under execution upon the Hubble judgment against Davis and Ricketts, and six days before the date of Williams' *deed*, for the sale so made).

Upon this state of facts the law is well settled that "*instantly*," upon the full payment of the purchase money, Davis' equity to call for and demand a deed was full and complete, and that, *thereupon*, the parties to the partition proceeding became and were seized of the legal title, in trust for Davis, and so remained until the execution of the sheriff's deed in partition to Davis on May 2, following. If that be so, it follows that, during this interval, the parties to the partition proceedings stood seized of an estate of inheritance to the use of Davis, within the meaning of section 2186, *supra*. *Worsham v. Callison*, 49 Mo. 206; 1 Wash. Real Prop. [5 Ed.] p. 233, sec. 13, *et seq.*, and authorities cited, and Washburn Real Prop. [3 Ed.] 209.

Indeed, defendants' counsel, in his brief and argument herein, expressly states and recognizes that as unquestioned law, by the use of the following question and answer thereto: "Was anyone seized to the use of Davis, during his marriage to plaintiff? His purchase at partition sale was equivalent to a purchase from the

owners; and, upon full payment of the price bid, he would have been entitled to a deed, and the heirs would have been seized to his use, though the deed would have been made by the sheriff."

The fact that the sheriff, thereafter on May 2, executed to Davis a formal deed, transferring the legal title and seizin, in no wise militates against the position heretofore taken, as to the force and effect of Davis' full and complete equity incident to his payment of all the purchase money. Indeed, defendants' counsel, in his argument, admits that: "It is true, when dower once attaches, the husband cannot, by any act or admission, defeat it." It is, also, true, as expressly declared by statute, that no *judgment* recovered against the husband shall prejudice the right and interest of the wife. R. S. 1879, sec. 2197; see, also, *Williams v. Courtney*, 77 Mo. 588; *Grady v. McCorkle*, 57 Mo. 172.

But it is insisted for defendants that, under the facts of this case, the sheriff's deed to Davis did not have the effect of vesting in him the legal seizin, which otherwise it would have had.

The claim is that the lien of the Hubble judgment of April, 1862, sprang up and fastened itself upon the land in question at the same instant and by one and the same act that made Davis' equity therein full and complete; and that this equity of Davis by operation of the execution sale to Williams, under the Hubble judgment, on May 1, was transferred to and vested in Williams; and that Davis, having thus parted with all beneficial interest in the land, at the date of his partition deed, the legal seizin thereby transferred did not *vest* in him, but, under the doctrine of relation, passed to and vested in Williams, who then held all the equity Davis ever had. But it must be remembered that this doctrine of relation is a mere *fiction* of law which is never allowed to operate so as to cut out the intervening rights of strangers. *Shumate v. Reavis*, 49 Mo. 333; *Strain v. Murphy*, 49 Mo. 337 and 341

Ordinarily, execution sales of real estate affect only such interest as the judgment debtor had therein, at the date of the sale, and not such as he may acquire thereafter. Ordinarily, also, the title of the purchaser to the interest bought does not pass to or vest in the purchaser until the execution of the sheriff's deed therefor. In the case at bar, although the execution *sale* to Williams took place May 1, the sheriff's *deed* therefor was not made until May 4. Under the facts, while it may be conceded that the sheriff's deed to Williams would pass the husband's equity, as against him, his heirs and assigns, yet, under the statute, as well as the doctrine of relation, it would not prejudice the wife's right of dower. And, for a greater reason, the wife's dower right in the husband's legal seizin would not be prejudiced by Williams' execution *purchase*, since, at the date thereof, the husband had no legal seizin, having, as we have seen, acquired it subsequent to the sale.

The further claim in defendants' behalf is, that the equity of Williams, the judgment purchaser, is equal, in point of time, to that of Davis, the partition purchaser; yet, it does not follow that it is equal to the widow's dower in the favor and protection of the statute (section 2197, *supra*), since it expressly provides that "no judgment or decree confessed by, or recovered against, him, and no laches, default, covin or crime of the husband, shall prejudice the right and interest of the wife provided in the foregoing sections of this chapter." *Grady v. McCorkle, supra.*

In this connection, we may here add that it is not true, as stated in the argument of defendants' counsel, that the widow's title is no better than an heir's. The law nowhere awards to the *heir's* title the same *measure of protection* as is accorded to the *wife's* right, in the section of the statute last quoted, against the husband's acts and those of *judgment creditors*. While, in a certain sense, she *takes* under the husband, in a larger sense she *holds* under the statute that exempts her

rights from the prejudicial acts of the husband and the *judicial* proceedings of creditors and others. In this case, whether the wife is to be regarded as endowable by reason of the equitable or legal seizin of her husband, in either event, she is equally within the protection and exemption accorded her by the sections of the dower act above set out.

The second branch of the case, also, is not without its complications. On examination, however, it will be seen, that they are complications in which the plaintiff has no interest and by which she is not affected. They were, as we shall see, incident to a suit to which neither she nor her husband was a party, and in which the struggle was wholly between third parties as to which had acquired, by execution purchase, the right of Davis to the property in question, of which, it was conceded, he had been deprived by operation of an execution or judicial sale. It was, therefore, immaterial to plaintiff, as well as her husband, which of the contestants to that struggle was right, and it made no difference to either which of the two might win.

In the outset of this branch of the case we may remark that defendants' counsel, in his abstract and brief, admits that "except the admissions of S. W. Davis proved, there was no evidence that the land was held by Davis for himself and Williams; nor that Williams paid the notes given for the purchase price, except what may be inferred from the fact that Davis had unsatisfied judgments standing against him." And he might have added that, except for the Crump suit, the answer of Williams therein, and the testimony of the witness Duncan, concerning the same, above referred to, there was no evidence that there were any *unsatisfied* judgments standing against him. The amount of the Hubble judgment, under which Williams and those holding under him claim was, as the record shows, only $10 for debt and —— dollars for damages; and the

record further shows that at the execution sale the land brought $24 more than enough to satisfy the same.

Defendants' counsel, also, admit that plaintiff's husband never was, at any time, in the *actual* possession of the land in question, and that Williams took possession under his purchase and that the defendants claim under him.

The Crump suit and the answer of Williams, defendant therein, as well as the alleged admission and declarations of Davis in reference thereto, as testified to by the witness, Duncan, are clearly "*res inter alios acta.*" Neither the plaintiff nor her husband was a party thereto ; nor are they bound thereby. The husband, Davis, at most, was but a prospective or contemplated witness therein ; but it does not appear that he was ever examined as such, or even that the case ever came to a trial. 2 Bouv. Law Dict. 579.

At the date of the alleged admissions and declarations of Davis, he had long prior thereto parted with whatever constructive seizin or possession, legal or equitable, he ever had to the land by operation of the execution sale and deed to Williams under the Hubble judgment. They were, therefore, admissions and declarations of a party having no interest whatever, either legal or equitable, in the subject-matter ; nor any possession thereof, actual or constructive, at the time they were made and uttered, and clearly mere hearsay, incompetent and inadmissible. *Steward v. Thomas*, 35 Mo. 202 ; *Weinrich v. Porter*, 47 Mo. 293.

In the case of *Van Duyne v. Thayre*, 14 Wend. 233, cited by defendants, the party making the admissions was in the possession and ocupation of the premises at the time. Besides that, they were admissions and declarations of a party, long since dead, testified to by a witness after the lapse of nearly twenty years, who himself, on cross-examination says : "I am attorney for the defendant in this cause—I cannot give the exact

language used in the conversation between Davis and myself, it has been so long ago. In fact, I had forgotten all about it, until, as attorney for defendant, in investigating this case, I found the papers. I ran across this answer in the Crump case, and, after reading that, I recollected of having this conversation with Davis. I do not remember when that conversation was. Davis died in 1886." And as such, conceding them to be competent, were of themselves, when standing alone and unsupported by other circumstances, as they are, *insufficient* to break down and overthrow the force and effect of the record in the partition suit and the sheriff's deed to Davis, especially after the lapse of nearly twenty years.

In the case of *Ringo v. Richardson*, 53 Mo. 385, this court speaking through SHERWOOD, J., announced the doctrine that: "Testimony as to verbal admissions of persons since dead is to be received with great allowance, and whenever it is attempted to prove resulting trusts, by virtue of such admissions, the testimony must be clear, strong and unequivocal, and leave no room for doubt in the mind of the chancellor, as to the existence of such a trust. And the admissions should be supported by other circumstances, also going to show the existence of the trust." In the case at bar, there are no such supporting circumstances, going, also, to show the existence of the alleged trust.

In the case of *Johnson v. Quarles*, 46 Mo. 423, BLISS, J., delivering the opinion, a similar doctrine is announced, and, proceeding further, it is, in effect, held that: "Evidence of declarations, in the nature of admissions by a deceased person, although competent, never amounts to direct proof of the facts claimed to have been admitted by those declarations; and it has sometimes been doubted whether they ought to be received at all, when introduced for the purpose of divesting a title created by a deed. However, if

Davis v. Green.

properly sustained by other circumstances, * * *· such declarations would warrant the court in sustaining the claim." In this case, however, there are no other circumstances properly sustaining such declarations. In view of the facts of this case, and the authorities and adjudications cited and referred to, we are of opinion, and so hold, that the admission of said admissions and declarations in evidence was error.

There is one matter not noticed in this opinion, for the reason that it was not noticed in the brief of either counsel in this court, nor is it mentioned or passed upon in the court below. The sheriff's deed to Williams, *as copied* in this record, does not embrace the tract of land in controversy in this case ; but, instead thereof, contains the "northeast, southeast, section 12, township 50, range 9."

The tract in controversy is "the northeast one-fourth of the south*west* quarter of section 12, township fifty ( 50 ), range nine ( 9 ), west, containing forty acres." This discrepancy, most likely, is a *clerical error*, in copying the sheriff's deed to Williams under execution sale upon the Hubble judgment. If, however, the error is in the deed itself it is quite another matter, and the defense would then have no standing in court, and it would then remain for defendants to consider and determine what course to pursue. We only mention the matter now that, when the case goes back for retrial, as it must, under our ruling, the parties may look into the matter and see how it is, and determine what course to pursue.

For the errors hereinbefore mentioned, the judgment of the trial court is reversed, and the cause remanded, for further proceedings in conformity hereto ; and it is accordingly so ordered, with the concurrence of all the judges, BARCLAY, J., specially, as stated in *Davis v. Evans, ante,* p. 164.